## MORRIS *v.* THE STATE.

The act proved in this case did not constitute a violation of so much of section 390 of the Penal Code as makes criminal a "notorious act of public indecency." To render any act notorious and public it must have been committed at a place where it might have been seen by more than one person.

Submitted November 6,—Decided December 1, 1899.

Certiorari. Before Judge Russell. Gwinnett superior court. September term, 1899.

*Oscar Brown*, for plaintiff in error.
*C. H. Brand, solicitor-general*, contra.

SIMMONS, C. J. Morris was put upon his trial in the city court of Gwinnett, on an accusation charging that he did "publicly and indecently expose his secret or private parts of his person in the presence of one Mrs. Ella Benton." He was convicted, and sued out a writ of certiorari to the superior court. Upon the hearing of the writ in that court, the certiorari was overruled and the conviction affirmed; whereupon he filed his bill of exceptions to this court, alleging error in the judgment of the superior court overruling the certiorari. There are various allegations of error set out in the petition for certiorari; but, in the view we take of the case, it is only necessary to discuss the one which alleges that the verdict is contrary to the

law and the evidence. The evidence of the offense, in substance, is that the accused was plowing in a field 175 yards from the house wherein Mrs. Benton resided; that there was a railroad embankment between the house and where the accused was plowing, waist high; that the ground between the house and the field was not cleared; that the accused stopped his plow, leaned against the plowstock, unbuttoned his pantaloons, pulled up his shirt, exposed his private parts to her view, and made a gesture for the purpose of calling attention to the same. Several witnesses testified that she could not possibly have seen the private parts of the accused from where she stood in the house to where she said he stood when the act was committed. But she swore positively that she did see him expose his private parts. It is contended by the counsel for the plaintiff in error that, admitting her evidence to be true, the evidence did not make out the offense as defined in § 390 of the Penal Code. That section reads as follows: "Any person who shall be guilty of open lewdness, or any notorious act of public indecency, tending to debauch the morals, or of keeping open tippling-houses on the Sabbath day, or Sabbath night, shall be guilty of a misdemeanor." It will thus be seen that this section embraces three offenses: open lewdness, a notorious act of public indecency, and keeping open tippling-houses on the Sabbath. In order to constitute the offense of which Morris was convicted, the evidence must show that it was notorious and public. This definition of public indecency seems to have been taken from the common law. We find the same definition in the Penal Code as early as 1817, when the penal laws were codified by the legislature. Schley's Digest, 380. The construction put upon this clause by the English courts was, that the act must be in a public place and where more than one person could have seen it; and that the crime was not committed by exposing the person to only one individual.

Some of the cases hold that it was sufficient if one person saw the exposure and others might have seen it. In the case of R. *v.* Webb, 1 Den. Cr. C. 345 (*338), it was held, "An indecent exposure in a place of public resort, if actually seen only by one person, no other person being in a position to see it, is

not a common nuisance." Parke, B., said: "In 1830, a French master was tried before me at York on an indictment, averring an indecent exposure, and charging a common nuisance. It was proved that he was seen from an opposite window by a maid servant, but there was no proof of his having been seen by any one else. I thought the exposure to the girl only did not amount to an indictable offence, and directed the jury to consider whether he was in such a position that the passers-by in the street could have seen him had they happened to look; if the jury were of that opinion they ought to find him guilty." Page 351 (*344). In a note to this case it is said: "With regard to the point decided in the principal case, it seems that the law does not consider public decency to be represented by one person in a public thoroughfare. The presence of one person only is not deemed the presence of the public; and the possible presence of others is too remote a possibility for the law to recognize. But if others be actually present, even though they do not see the offence actually committed, the law recognizes the risk of their seeing it as sufficiently proximate to be dealt with as a reality." Page 354 (*347). See also R. v. Watson, 2 Cox Cr. Cas. 376; 12 Am. & Eng. Enc. L. (2d ed.) 538; 1 Bish. Cr. L. §§ 244, 501, 1125, et seq. According to these authorities, the facts in this case do not make out the notorious and public indecency which the statute makes a criminal offense. The act, if committed at all, was in a field, not on a public road or near by. Only one person saw the indecent exposure, and there is no evidence in the record that others could have seen the same. Indeed, the accusation charges that it was committed in the presence of Mrs. Benton, without charging that it was in a public place; or, if in a private place, that others could have seen the exposure as well as Mrs. Benton. We do not mean to hold that this offense can not be committed elsewhere than in a public road or street, or a place where the public usually resort; but we do hold that the act must be notorious and public, and it can not be so before one person alone. Nor do we mean to hold that the act proved would not be indictable as open lewdness under the section above cited. See in this connection

Com. *v.* Waddell, 128 Mass. 52, s. c. 35 Am. Rep. 357; State *v.* Juneau, 88 Wis. 180; Williams *v.* People, 67 Ill. App. 344.

*Judgment reversed.   All the Justices concurring.*