**UNITED STATES of America ex rel. Lee Hardy HUGULEY, Petitioner,**

v.

**J. Lamar MARTIN, Sheriff, DeKalb County, Georgia, and DeKalb Bonding Company, Surety, Respondent.**

**Civ. A. No. 14447.**

United States District Court,
N. D. Georgia,
Atlanta Division.

March 18, 1971.

**490**

Howard Moore, Jr. and Peter E. Rindskopf, Atlanta, Ga., for petitioner.

William B. Morgan, Asst. Sol., State Court of DeKalb County, Decatur, Ga., for respondent.

## ORDER OF COURT

MOYE, District Judge.

Petitioner Huguley was convicted of indecent exposure, in violation of Ga. Code Ann. § 26–6101, in the Criminal Court of DeKalb County, on July 22, 1968. He appealed his conviction to the Georgia Supreme Court, which upheld the constitutionality of the statute and transferred his case to the Court of Appeals. Huguley v. State, 225 Ga. 191, 167 S.E.2d 152 (1969). Relief was denied in the Court of Appeals, Huguley v. State, 120 Ga.App. 332, 170 S.E.2d 450 (1969), and certiorari was denied, Huguley v. Georgia, 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 66 (1970).

There is no question of exhaustion of remedies under 28 U.S.C. § 2241, since the same questions were presented to the state courts. Respondent has answered and briefed the case, and since the constitutionality of a state statute is in question, the Attorney General filed a very fine brief.

Petitioner, who is proceeding in forma pauperis, raises two points. First, he asserts that the Georgia statute under which he was convicted is unconstitutionally vague. Secondly, he contends that the state's failure to have him examined by a psychiatrist denied him due process under the Fourteenth Amendment.

### Constitutionality of the State Statute

Ga.Code Ann. § 26–6101,[1] under which petitioner was convicted, had been superseded by Ga.Code Ann. § 26–2011, effective July 1, 1969. This, of course, does not vitiate petitioner's attack in any way, since he was convicted under the old law.

A criminal statute must be written in such definite terms that it gives notice of the prohibited offense to those who would be prosecuted under it, or it is unconstitutional. United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

Petitioner claims that the word "lewd" does not have sufficient certainty of definition so that a person of ordinary intelligence would have fair notice of what conduct is "lewd", and is therefore unconstitutional, See, United States v. Harriss, supra, and that adding the word "open" adds no clarity to the meaning. The word "open" would only have the effect of prohibiting lewd behavior when done in public where·identical behavior in private would be permissible, Cf., Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Thus, if "lewd" is not sufficiently certain, the statute must fall.

In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498

---

1.
Georgia Code Annotated § 26–6101 — *Lewdness and public indecency.*—Any person who shall be guilty of open lewdness or any notorious act of public indecency tending to debauch the morals shall be guilty of a misdemeanor.

(1957), the Supreme Court outlined the standard:

> This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. "* * * [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *." United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed. 1877.

*Id.*, at 491, 77 S.Ct. at 1312.

 In determining whether that standard has been met, the Court will look to the definition of the statute as it has been construed by the Georgia Courts. Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). The Georgia statute under attack here was first passed in 1866, and is a codification of the common law. Redd v. State, 7 Ga.App. 575, 67 S.E. 709 (1910); Gilmore v. State, 118 Ga. 299, 45 S.E. 226 (1903). "Lewdness" was defined in Piercy v. State, 92 Ga.App. 599, 89 S.E.2d 554 (1955). There the Court said:

> We find no case in Georgia specifically defining the offense of "open lewdness." Lewdness has been defined as being the irregular indulgence of lust and at common law it was considered as only a specialized class of public indecency; that is to say, the offense of lewdness was an indecency referable especially to sexual matters, and it included any gross indecency which was sufficiently open and notorious as to tend to corrupt the morals of the community. * * * Save for the sexual aspect of lewdness, the ingredients of the offenses of "open lewdness" and a "notorious act of public indecency" are the same. (Citations omitted.)

*Id.*, at 600, 89 S.E.2d at 555.

Thus, applying the *Roth* standard, it appears to a certainty that Huguley knew that when he exposed his sexual organ to public view he was committing a proscribed offense. *Compare* this definition, *with* the new code, Ga.Code Ann. § 26–2011,[2] which also has the word "lewd" in it.

The Georgia Courts considered the words "tending to debauch the morals" in Redd v. State, *supra*. The offense charged there as a violation of § 6101 (codified as § 390 of the Penal Code of 1895) was exhibiting a cow and a bull copulating within view of a public road where women and children were present. The Court, in a very learned treatise, pointed out that this was an offense at common law, which had since been codified. It concluded that the act charged, even though it did not involve the exposure of human sexual organs, violated the section since it "tended to debauch the morals." The authority considered there, in large part, did involve exposure of human sexual organs, thus making clear that such conduct was proscribed by the statute.

The Court holds that the constructions placed upon the statute by the Georgia Courts give it a sufficiently certain definition that it is not offensive to the Fourteenth Amendment. Accord, Conger v. Lull, et al., C.A.No.14064, N.D. Ga., Order of December 17, 1970

---

2.

Georgia Code Annotated § 26–2011

*Public indecency.*—A person commits public indecency when he performs any of the following acts in a public place and upon conviction shall be punished as for a misdemeanor:

(a) An act of sexual intercourse;

(b) A lewd exposure of the sexual organs;

(c). A lewd appearance in a state of partial or complete nudity;

(d) A lewd caress or indecent fondling of the body of another person.

(construing the successor to Ga.Code Ann. § 26–6101).

■ Petitioner urges upon the Court cases such as Hunter v. Allen, 286 F. Supp. 830 (N.D.Ga.1968), Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966), and Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), as requiring a holding that words, such as "lewd", are unconstitutionally vague. All of those cases are distinguishable, however, in that they dealt with First Amendment rights, and overbreadth in that area is subject to more exacting standards of precision than statutes whose ambiguity is attacked for vagueness. Hunter v. Allen, 422 F.2d 1158 (5th Cir. 1970).

*Failure to Give Psychiatric Examination*

Petitioner asserts that the failure of the state to appoint a psychiatrist to examine him violated his right to a fair trial and due process under the Fourteenth Amendment. He moved before trial for the appointment of a psychiatrist to examine him, which motion was denied. He raised the same ground by his Amended Motion For a New Trial, incorporating therein a letter from a psychiatrist who had examined him.

The psychiatrist who examined Huguley was retained by counsel three days before trial, although his report was not received in time for use at trial.

Petitioner alludes to some discrimination because of his indigency, but never fully raises the issue. In essence, the Court takes petitioner's claim to be that he has a right to have the state pay for a psychiatrist to examine him, which right is analogous to the right to counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), to have counsel on appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811 (1963), or to have a transcript, Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The Court does not find that such a right is constitutionally mandated.

The State strongly urges its statutes upon the Court as satisfying any constitutionally imposed duty to have an accused psychiatrically examined. Ga. Code Ann. §§ 27–1501, 1502 and 1504,[3] while not clearly on their face granting an examination of an accused for competency to stand trial, do grant that right when read with the cases construing them. Brown v. State, 215 Ga. 784, 113 S.E.2d 618 (1960); Cardin v. Harmon, 217 Ga. 737, 124 S.E.2d 638 (1962).

The great weight of authority from jurisdictions which have considered whether the state is required to furnish

3.

| Georgia Code Annotated § 27–1501 | *Demurrers and special pleas to be in writing. Right to plead "not guilty."*—If the prisoner, upon being arraigned, shall demur to the indictment, or plead to the jurisdiction of the court, or in abatement, or any special plea in bar, the demurrer or plea shall be made in writing; and if such demurrer or plea shall be decided against the prisoner, he may nevertheless plead and rely on the general issue of "not guilty." |
| --- | --- |
| Georgia Code Annotated § 27–1502 | *Plea of insanity, how tried.*—Whenever the plea of insanity is filed, it shall be the duty of the court to cause the issue on that plea to be first tried by a special jury, and if found to be true, the court shall order the defendant to be delivered to the superintendent of the Milledgeville State Hospital, there to remain until discharged in the manner prescribed by law. |
| Georgia Code Annotated § 27–1504 | *Lunacy and insanity, trial of persons afflicted with.*—No lunatic or person afflicted with insanity shall be tried, or put upon his trial, for any offense, during the time he is afflicted with such lunacy or insanity, which shall be tried in the manner hereinbefore pointed out where the plea of insanity at the time of trial is filed, and, on being found true, the prisoner shall be disposed of in like manner. |

a psychiatrist in the absence of a statute requiring it, holds that it is not constitutionally required.

Probably the strongest case so holding is United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953). The Court there refused to appoint a psychiatrist for a pretrial examination, although it appears that there was an examination by a court-appointed psychiatrist and testimony from two psychiatrists called by the defense. The Supreme Court held that the state did not have the duty to appoint a psychiatrist. *Id.*, at 568, 73 S.Ct. 391. The Court is not unmindful, however, of the intervening decisions by the Supreme Court, which have greatly expanded the rights of the accused under the due process clause. Gideon v. Wainwright, *supra;* Douglas v. California, *supra;* Griffin v. Illinois, *supra;* Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Cf.,* Hintz v. Beto, 379 F.2d 937 (5th Cir. 1967).

The failure to appoint a psychiatrist was held not "so unfair here as to raise a federal constitutional issue." Watson v. Patterson, 358 F.2d 297, at 298 (10th Cir. 1966).

Several Arizona cases have reached the same conclusion. In State v. Crose, 88 Ariz. 389, 357 P.2d 136 (1960), the Court denied defendant's request that a psychiatrist be appointed to examine him, holding that it was under no constitutional compulsion to furnish the full paraphernalia of defense. A like result was reached in State v. Thomas, 104 Ariz. 338, 452 P.2d 512 (1969), which said the Court had no authority, absent express legislation, to appoint a psychiatrist. Accord, State v. Bowen, 104 Ariz. 138, 449 P.2d 603, 34 A.L.R.3d 1246 (1969) (en banc); cert. den., 396 U.S. 912, 90 S.Ct. 229, 24 L.Ed.2d 188 (1969).

Similar results have been reached in several other states. *See,* People v. York, 207 Cal.App.2d 880, 24 Cal.Rptr. 815 (1962); Watson v. People, 155 Colo. 357, 394 P.2d 737, cert. den., 380 U.S. 966, 85 S.Ct. 111, 14 L.Ed.2d 156 (1965), and Dolan v. People, 449 P.2d 828 (1969) (Colorado); Ellzey v. State, 158 Tex.Cr.R. 604, 259 S.W.2d 211 (1953). *See also,* Chadwick v. State, 221 Ga. 574, 146 S.E.2d 283 (1965); Gunter v. State, 223 Ga. 290, 154 S.E.2d 608 (1967).

Some cases have reached a contrary result, requiring the appointment of a psychiatrist. The Court in Hintz v. Beto, *supra,* held that the right to have a psychiatrist appointed was a right cognate to the effective assistance of counsel under the Sixth Amendment. In that case, however, the petitioner had twice been committed to a mental institution. *See also,* Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Mears v. State, 83 Nev. 3, 422 P.2d 230 (1967), cert. den., 389 U.S. 888, 88 S.Ct. 124, 19 L.Ed.2d 188 (1967), reh. den., 389 U.S. 945, 88 S.Ct. 299, 19 L.Ed.2d 303 (1967); Bush v. McCollum, 231 F.Supp. 560 (N.D.Tex.1964), aff'd sub nom. McCollum v. Bush, 344 F.2d 672 (5th Cir. 1965), cf., State v. Wheeler, 74 Wash.2d 289, 444 P.2d 687 (1968).

■ The only case from this Circuit, Hintz v. Beto, *supra,* is distinguishable. The rest of the cases, with the possible exception of U. S. ex rel. Smith v. Baldi, *supra,* are merely persuasive since the Court is deciding a federal constitutional question. The Court is persuaded, however, and holds that petitioner was not denied due process or the effective assistance of counsel by the refusal of the trial judge to appoint, at state expense, a psychiatrist to examine him. As to appointment of alienist, *see generally* Indigent—Right to Appointed Expert, 34 A.L.R.3d 1256.

■ An additional question presented here is whether the trial judge, *sua sponte,* should have ordered a psychiatric examination based upon all indications of the necessity for such examination which were before him. Rhay v.

White, 385 F.2d 883 (9th Cir. 1967). Petitioner asserts that the question is broader: whether petitioner's request sufficiently invoked the Court's power to grant such a hearing. Petitioner's question must be answered in the negative, since there is an established and proven Georgia procedure which was bypassed, either knowingly or negligently. Ga. Code Ann. §§ 27–1501, 1502, and 1504, *supra.* The fact that counsel was aware of the potential problem with petitioner's competency to stand trial and assist in his defense, as distinguished from his sanity at the time of the offense, is clearly demonstrated by his motion at trial, by his request for Dr. Cohen to examine Huguley, and by his Amended Motion For New Trial. That he chose to seek the examination outside the established procedure and instead proceeded on an *ad hoc* basis should not be allowed to work to the state's disadvantage in defending the conviction.

Under this question, *i. e.,* whether the trial judge should have *sua sponte* ordered an examination, the Court will consider the facts most favorably to petitioner. At the time of the Amended Motion For New Trial, the trial court had three indications: (1) Huguley's oral motion by counsel at trial, (2) the Amended Motion For New Trial, which contained (3) Dr. Cohen's letter (T., 19–20). Taking all of these indications together, the Court cannot, even with the 20–20 hindsight granted by Rhay v. White, *supra,* look over the trial judge's shoulder and say that he erred in not finding *sua sponte* that petitioner should have been examined to see if he was competent to stand trial.

In summary, the Court sustains the statute, Ga.Code Ann. § 26–6101 (superseded July 1, 1969, by new Ga.Code Ann. § 26–2011), in the face of the constitutional attack, and finds that petitioner was not denied due process or the effective assistance of counsel because he was not granted a psychiatric examination.

The petition for habeas corpus is denied.